**THE LAW OFFICE OF ROBERT L. STARR**
Robert L. Starr, State Bar No. 183052
robert@starrlaw.com
23901 Calabasas Road, Suite 2072
Calabasas, CA 91302
Voice: 818-225-9040
Facsimile: 818-225-9042

Attorneys for Plaintiff Juvenal Rodriguez
and others similarly situated

ADDITIONAL COUNSEL LISTED ON NEXT PAGE

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JUVENAL RODRIGUEZ, on behalf of himself and others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>FCA US, LLC,<br><br>Defendant. | Case No.<br><br>**CLASS ACTION**<br><br>**COMPLAINT FOR:**<br><br>**VIOLATIONS OF CALIFORNIA BUSINESS AND PROFESSIONS CODE SECTION 17200,** *et seq.* |

**POMERANTZ LLP**
Jordan L. Lurie, State Bar No. 130013
jllurie@pomlaw.com
Ari Y. Basser, State Bar No. 272618
abasser@pomlaw.com
1100 Glendon Avenue
15th Floor Los Angeles, CA 90024
Telephone: (310) 432-8492

Manny Starr (319778)
manny@frontierlawcenter.com
Adam Rose (210880)
adam@frontierlawcenter.com
**Frontier Law Center**
23901 Calabasas Road, #2074
Calabasas, CA 91302
Telephone: (818) 914-3433
Facsimile: (818) 914-3433

Additional Attorneys for Plaintiff
Juvenal Rodriguez and others similarly situated

1  Plaintiff Juvenal Rodriguez ("Plaintiff"), individually and on behalf of all

2  other California citizens similarly situated, brings this action against Defendant

3  FCA US, LLC ("Defendant" or "FCA"), upon information and belief, except as to

4  his own actions, the investigation of his counsel, and the facts that are a matter of

5  public record, and alleges as follows:

6  **INTRODUCTION**

7  1.  This consumer class action arises out of FCA's failure to properly

8  identify and pay for the diagnosis, repair, and replacement of fuel injectors in

9  Class Vehicles, as defined below, for 15-years or 150,000-miles, pursuant to

10  California Code of Regulations ("CCR") Title 13, Section 1962.1, 2035, 2037 and

11  2038, ("California Emissions Warranty"), relating to Partial Zero Emissions

12  Vehicles and Super Ultra Low Emissions Vehicles, for which FCA has received a

13  .2 Zero Emissions Credit from the California Air Resources Board. These vehicles

14  are collectively referred to as "PZEV" vehicles.

15  2.  Plaintiff's claims relate specifically to all vehicles distributed by FCA

16  that are PZEV vehicles and for which FCA does not provide 15-years or 150,000-

17  miles coverage relating to fuel injectors ("Class Vehicles").

18  3.  Pursuant to the California Emissions Warranty, defects which

19  increase regulated emissions in PZEV vehicles, such as the Class Vehicles, shall

20  be covered under warranty for 15-years or 150,000-miles.

21  4.  As will be detailed further below, the California Air Resources Board

22  has determined that defects which cause illumination of the MIL are covered

23  under the 15-years or 150,000-miles California Emissions Warranty. This is

24  because, pursuant to Title 13, Section 1968.2, the MIL is not supposed to

25  illuminate unless the vehicle's onboard diagnostic system ("OBDII" or "OBD2")

26  has detected a defect which increases regulated emissions.

27  5.  Furthermore, defects which cause illumination of the MIL would

28  result in the vehicle failing a California smog check. Thus, defects which cause a

vehicle to fail a California smog check also increase regulated emissions and should be covered under the 15-years or 150,000-miles California Emissions Warranty.

6.    Fuel injector defects in Class Vehicles increase regulated emissions, cause the MIL to illuminate, and cause the vehicle to fail a California smog check. Therefore, the fuel injectors in Class Vehicles should be covered by the California Emissions Warranty.

7.    As a result of FCA not providing proper warranty coverage for fuel injectors in Class Vehicles, Plaintiff and members of the Class and Subclasses have and are continuing to pay out of pocket for repairs that should be covered under the California Emissions Warranty. Further, as a result of FCA not providing proper warranty coverage for fuel injectors in Class Vehicles, Plaintiff and the members of the Class and Subclasses have and are continuing to suffer damage as a result of purchasing or leasing Class Vehicles with a deficient warranty which was worth less than the warranty they were legally entitled to at the time of purchase or lease.

8.    FCA has failed to extend California Emissions Warranty coverage to fuel injectors in Class Vehicles as required by the CCR. As explained herein, this is an unlawful and unfair business practice.

## BACKGROUND

9.    For decades, FCA has been in the business of distributing FCA vehicles to the State of California, with the intent to sell FCA vehicles to consumers in California. As such, FCA vehicles have been subject to state and federal regulations regarding both emissions standards and regarding FCA's obligations to provide consumers with warranties relating to emissions related parts.

10.    California Code of Regulations section 1962.1, 2035, 2037, and 2038, requires that, for PZEV vehicles for which PZEV credits are provided, all

defects in materials or workmanship that would cause the vehicle's on-board diagnostic malfunction indicator light to illuminate (as defined in CCR section 2037), all defects in materials or workmanship that would increase emissions, and all defects in materials or workmanship that would result in the vehicle not being able to pass a California smog check are warranted for *15-years* or *150,000-miles*, whichever occurs first (italics added), pursuant to the California Emissions Warranty. The 15-year warranty period is reduced to 10 years or 150,000-miles only for "a zero-emission energy storage device used for traction power (such as a battery, ultracapacitor, or other electric storage device)." The Class Vehicles are all defined as PZEV vehicles pursuant to California Code of Regulations 1962.1.

11.    Pursuant to the California Code of Regulations, FCA is required to cover all parts that satisfy Section 1962.1, 2035, 2037, and 2038 as being emissions related parts, for 15-years or 150,000-miles, unless the emissions part is a battery or other zero emission storage device, wherein the warranty is 10 years/150,000-miles.

12.    FCA fails to comply with these statutory requirements by failing to provide 15-years or 150,000-miles California Emissions Warranty coverage to Class Vehicles for fuel injector defects which cause illumination of the MIL, which cause an increase in regulated emissions, and/or which would cause a Class Vehicle to fail a smog check.

13.    FCA is engaged in a nefarious scheme to limit its warranty exposure under California's emissions warranty requirements in violation of California emissions law by unilaterally defining and wrongfully limiting the parts that should properly be identified as parts covered by the California Emissions Warranty and covered for 15-years or 150,000-miles under the CCR.

14.    Section 1962.1 requires that, relating to Class Vehicles, any warranted part, as defined by the CCR, that would cause the vehicle's on-board diagnostic malfunction indicator light to illuminate, increase emissions or that

would result in the vehicle not being able to pass a California smog check must be covered for 15-years or 150,000-miles. However, FCA's California Emissions Warranty for the Class Vehicles identifies only a handful of emissions parts that FCA contends qualify for the California Emissions Warranty's 15-year/150,000-mile warranty coverage. That list, generated by FCA, for its own financial benefit to save warranty costs, is woefully inadequate and incomplete and fails to identify, or provide extended warranty coverage for, *all* of the emissions related parts that, in fact, qualify for 15-year/150,000-mile coverage under Section 1962.1.

15.   By narrowly self-defining the parts that are required to be covered under the California Emissions Warranty, FCA is able to reduce the amount of money that it spends on warranty-related repairs, knowing that most if not all dealerships or consumers will not investigate or understand what components should actually and correctly be covered under the California Emissions Warranty as required by the California Code of Regulations.

16.   As a result of FCA's conduct, Plaintiff and members of the Class have paid and are continuing to pay out of pocket for repairs that should be covered under the California Emissions Warranty. As a further result of FCA's conduct, Plaintiff and members of the Class purchased or leased vehicles with warranties which were less valuable than the warranties they were legally entitled to.

17.   Plaintiff's theory does not depend on the premise that CARB was deceived by the information that FCA submitted, or that CARB ever expressed a concern about FCA's classification of components as being covered by the California Emissions Warranty. Plaintiff is not accusing CARB of mismanagement or blaming CARB for FCA's inaccuracy. FCA alone is responsible for selecting and identifying to CARB the parts that FCA has unilaterally identified as being covered by the California Emissions Warranty, as part of its application for vehicle certification. That list may be correct as far as

CLASS ACTION COMPLAINT

1    CARB may know. But, as Plaintiff alleges, the list of parts FCA submitted to

2    CARB was incomplete, as evidenced by Plaintiff's own experience.

3                              **JURISDICTION AND VENUE**

4          18.    This Court has original jurisdiction over the subject matter of this

5    action pursuant to 28 U.S.C. § 1332(d)(2)(A) because: (i) members of the Class

6    are citizens of a state different from that of FCA; and (ii) aggregating the claims of

7    individual Class members, the total matter in controversy exceeds the sum or

8    value of $5,000,000, exclusive of interests and costs. Further, 28 U.S.C. §

9    1332(d)(5) does not apply because (i) FCA is not a state, state official, or other

10   governmental entity against whom the Court may be foreclosed from ordering

11   relief, and (ii) the number of members of the Class in the aggregate exceeds 100.

12         19.    This Court has personal jurisdiction over FCA because FCA has

13   sufficient minimum contacts with California, having intentionally availed itself of

14   the California market so as to render the exercise of jurisdiction over it by this

15   District Court consistent with traditional notions of fair play and substantial

16   justice.

17         20.    Venue is proper in this Court pursuant to 28 U.S.C. §1391 because

18   FCA conducts business within the State of California, has failed to designate with

19   the office of the California Secretary of State a principal place of business in

20   California, and a substantial part of the events giving rise to the claims alleged

21   herein occurred in this District.

22                                    **PARTIES**

23         21.    Plaintiff Juvenal Rodriguez ("Rodriguez") is, and at all times relevant

24   hereto has been, an individual. At all times relevant, Plaintiff resided in Fullerton,

25   California, in Orange County.  The repairs that give rise to this action were made

26   to Rodriguez' vehicle in Orange County, California.

27         22.    Defendant FCA was and is, upon information and belief, a Delaware

28   corporation, headquartered in Michigan, doing business in the State of California.

FCA sells PZEV Vehicles, including the Class Vehicles, in the State of California. FCA sells Partial Zero Emissions Vehicles and Hybrid Vehicles, including the Class Vehicles, in the State of California. On information and belief, Defendant FCA is not a citizen of California.

23.    Plaintiff reserves the right to expand, limit, modify, or amend these allegations at any time, based upon, *inter alia*, changing circumstances and/or new facts obtained during discovery.

## SUBSTANTIVE ALLEGATIONS

24.    Rodriguez purchased and is the owner of a 2015 Chrysler 200, VIN 1C3CCCAB9FN578295 ("Rodriguez Vehicle"). The Rodriguez Vehicle at all times herein relevant was purchased by Rodriguez in the state of California and registered in the state of California.

25.    On June 16, 2022, at 130,364 miles, the Rodriguez Vehicle was presented for repairs to McPeek's Chrysler Dodge Jeep RAM of Anaheim ("McPeek's"), located at 1221 S Auto Center Dr, Anaheim, CA 92806. Anaheim is located in Orange County, California. McPeek's is an FCA certified repair facility.

26.    Rodriguez brought the Rodriguez Vehicle in for repair because the Check Engine light came on.

27.    A diagnostic scan of the vehicle by the repair facility found that the P0302 OBDII fault code was triggered. The P0302 OBDII fault code indicates a Cylinder 2 misfire. A misfire is a condition which causes an increase in regulated emissions.

28.    The repair facility also "found injectors leaking fuel into intake when not running." This is a condition which increases regulated emissions because the fuel that leaks into the intake when the engine is not running will not be properly combusted, increasing fuel consumption. Furthermore, this condition is a sign of a leaking injector. Leaking injectors prevent proper fuel to air mixture, increasing

emissions, decreasing fuel economy, reducing engine efficiency and causing the illumination of the check engine light.

29.     The fuel injector repair cost was $1,004.17, and the repair facility indicated that the repair would not be covered under warranty.

30.     Plaintiff denied the repair and paid a $199.00 diagnostic fee out of pocket.

31.     California Code of Regulations Section 1962.1, California Code of Regulations Section 2035, *et seq*., California Code of Regulations Section 2037, *et seq*., and California Code of Regulations Section 2038, *et seq*., establish the minimum warranty coverage that FCA is required to provide to consumers relating to FCA Partial Zero Emissions Vehicles and Hybrid Vehicles that FCA imports and distributes in California.

32.     Pursuant to California Code of Regulations Section 2035, with regard to 1990 and subsequent model year vehicles, a "warranted part" is defined as "any part installed on a motor vehicle or motor vehicle engine by the vehicle or engine manufacturer, or installed in a warranty repair, which affects any regulated emission from a motor vehicle or engine which is subject to California emission standards."

33.     Furthermore, California Code of Regulations Section 2037(b) states, in relevant part: "The manufacturer of each motor vehicle or motor vehicle engine shall warrant to the ultimate purchaser and each subsequent purchaser that the vehicle or engine is:

(1)     Designed, built, and equipped so as to conform with all applicable regulations adopted by the Air Resources Board pursuant to its authority in chapters 1 and 2, part 5, division 26 of the Health and Safety Code; and

(2)     Free from defects in materials and workmanship which cause the failure of a warranted part to be identical in all material

respects to the part as described in the vehicle or engine manufacturer's application for certification, including any defect in materials or workmanship which would cause the vehicle's on-board diagnostic malfunction indicator light to illuminate, for a period of three years or 50,000 miles, whichever first occurs; and

(3)    Free from defects in materials and workmanship which cause the failure of a warranted part described in section (c) below for seven years or 70,000 miles, whichever first occurs."

34.    With regard to Partial Zero Emissions Vehicles, California Code of Regulations 1962.1 extends the performance and defects warranty period set forth in subdivision 2037(b)(2) and 2038(b)(2) to 15-years or 150,000-miles, whichever occurs first, except that the time period is to be 10 years for a zero-emission energy storage device used for traction power (such as a battery, ultracapacitor, or other electric storage device). Section 1962.1(D) states, in relevant part: "(D) *Extended Warranty*. Extend the performance and defects warranty period set forth in subdivision 2037(b)(2) and 2038(b)(2) to 15-years or 150,000-miles, whichever occurs first except that the time period is to be 10 years for a zero-emission energy storage device used for traction power (such as a battery, ultracapacitor, or other electric storage device)."

35.    In short, the California Code of Regulations section 1962.1 requires that, for PZEV vehicles, all defects in materials or workmanship that would cause the vehicle's on-board diagnostic malfunction indicator light to illuminate [as defined in the California Code of Regulations section 2037(b)], that would increase the vehicle's emissions, or that would result in the vehicle not being able to pass a California smog check are warranted for *15-years* or *150,000-miles*, whichever occurs first (italics added). The 15-year warranty period is reduced to 10 years or 150,000-miles only for batteries or zero-emission energy

storage devices.

36.     Under Sections 1962.1, 2035, 2037, and 2038 of the California Code of Regulations, it is clear that this repair to Plaintiff's vehicle should have been covered for 15-years or 150,000-miles. This is because the defect increased regulated emissions, illuminated the MIL, and would have caused Plaintiff's vehicle to fail a smog test.

37.     Specifically,  Specifically, Leaking injectors prevent proper fuel to air mixture, increasing emissions, decreasing fuel economy and reducing engine efficiency. Furthermore, leaking fuel injectors impair the fuel pressure of the fuel being injected into the combustion chamber, which causes improper atomization of fuel in the combustion chamber, increasing regulated emissions. Finally, leaking fuel injectors cause an OBDII fault code to be triggered and cause the MIL to illuminate.

38.     For the reasons stated herein, CARB regards fuel injectors as emissions-related parts. As stated herein, on June 1, 1990, CARB published a document entitled, "Emissions-Related Parts List" which specifically identifies fuel injectors as emissions-related parts.

39.     Thus, the defective condition of the Rodriguez Vehicle does, in fact, increase regulated emissions.

40.     Furthermore, it is Plaintiff's information and belief that the conditions described relating to the Rodriguez vehicle causes illumination of the MIL and would cause the Rodriguez vehicle to fail a California smog check.

41.     When a part that is, or should be, covered under the California Emissions Warranty fails as described herein, it also fails to perform as described in the vehicle's application for certification under section 2037(b)(2), as further described below.

42.     FCA has acted as alleged herein in an effort to reduce the amount of money that it spends on warranty-related repairs, knowing that most if not all

dealerships or consumers will not investigate or understand what components should actually be covered under the California Emissions Warranty. FCA's conduct is part of a systematic effort by FCA to avoid complying with California law. If FCA complied with the terms of California law by properly identifying all parts that are covered under the California Emissions Warranty, then FCA dealerships would properly provide warranty coverage for covered all parts, and consumers would not have to pay out of their own pocket for said repairs.

43.     Furthermore, as a result of FCA's intentional failure to cover fuel injectors in Class Vehicles for the duration of the California Emissions Warranty's period, Plaintiff and the Class members were damaged at the time they purchased or leased a Class Vehicle. Specifically, when Plaintiff and the Class members purchased or leased a Class Vehicle, they received a vehicle with a less valuable warranty than the warranty they were entitled to because of the truncated fuel injectors warranty.

44.     FCA's conduct violates California's unfair business practices statute, California Business and Professions Code sections 17200 *et seq*. (the "UCL").

45.     Plaintiff and other Class members have suffered damage as a result of FCA's wrongful, unfair, and unlawful conduct.

46.     Plaintiff's action seeks injunctive relief and declaratory relief, declaring that FCA's current and past practices as alleged herein do not comply with the CCRs and with the California Emissions Warranty laws, compelling FCA to properly and fully identify that fuel injectors in Class Vehicles should be covered by the California Emissions Warranty, compelling FCA to identify the correct warranty period for fuel injectors, and compelling FCA to provide warranty coverage for fuel injectors pursuant to the California Emissions Warranty. The recovery of out-of-pocket expenses is restitution, not damages, and is ancillary to Plaintiff's primary goal of obtaining declaratory relief and/or requiring Defendant to properly and fully comply with the California

Emissions Warranty as described herein.

47.    Plaintiff and other Class members still own Class Vehicles and in the future will need to repair or replace fuel injectors in their vehicle while it is still within the 15-year and 150,000-mile California Emissions Warranty period. At this time, with regard to the Class Vehicles, FCA is refusing to provide California Emissions Warranty coverage for fuel injectors.

## CARB DECLARATON

48.    The California Air Resources Board ("CARB") has provided a Declaration from Allen Lyons, who, at the time the Declaration was made, was the Chief of the Emissions Certification and Compliance Division of CARB regarding the California Emissions Warranty. The Declaration (hereinafter, the "CARB Declaration") was made "for the sole purpose of educating the Courts about CARB's interpretation and implementation of California's warranty requirements." The CARB Declaration sets forth CARB's interpretation of certain of the foregoing CCR provisions, including how to define a "warranted part" for purposes of the California Emissions Warranty.

49.    The CARB Declaration states, in relevant part, that "warranted parts" under the California Emissions Warranty "include any components that can or are required to illuminate the OBD Malfunction Indicator Light (MIL) in the event of a malfunction, even if the primary function of the component is not emission control, within the warranty period. (Cal. Code Regs., tit. 13, § 2037, subd. (b)(2).) The MIL is a light located on the driver's side instrument panel that, when illuminated, is amber in color and displays "Check Engine/Powertrain," "Service Engine/Powertrain Soon," or the International Standards Organization (ISO) engine symbol; the MIL illuminates to notify the driver of detected malfunctions of OBD-monitored emissions systems on the vehicle. (Cal. Code Regs., tit. 13, § 1968.2, subds. (a), (d)(2.1.1) & (2.2.).)"

///

50.     As further alleged herein, FCA has systemically failed to follow the foregoing standards. FCA has engaged in a custom and practice of completely disregarding its obligations under the CCRs with respect to the California Emissions Warranty.

51.     Specifically, Defendant has an obligation under the California Emissions Warranty to identify all emissions-related vehicle components for which there should be warranty coverage. As a custom and practice, FCA has interpreted this obligation too narrowly, resulting in FCA wrongfully failing to identify numerous vehicle components as emissions-related vehicle components under the California Emissions Warranty, including, but not limited to, fuel injectors.

52.     The CARB Declaration also clarifies the standard for determining whether a warranted part is emissions-related. According to CARB, as set forth above, any vehicle part that causes the MIL to illuminate and/or affects regulated emissions is an emissions-related part under the California Emissions Warranty law. This is not the standard that FCA has been using.

53.     Based on the CARB Declaration, FCA is required to provide coverage for all components whose failure: (1) affects any regulated emission from a motor vehicle; and (2) can or are required to illuminate the MIL, even if the primary function of the component is not emissions control. The California Code of Regulations mandates that the purpose of the MIL is to notify the driver of defective malfunctions of the OBDII monitored emissions systems of the vehicle; and/or failures which will cause a vehicle to fail a smog test as mandated by the California Health and Safety Code.

54.     FCA, as a matter of custom and practice, has failed to identify as covered components all components which can or are required to illuminate the MIL. Furthermore, FCA fails to identify all components whose failure affects a regulated emission.

55.     FCA has the ability to determine what component failures result in the MIL illuminating. Furthermore, California Code of Regulations Section 1968.2 specifically mandates that the MIL should not illuminate unless there is an emissions-related defect, and the regulations mandate that if a component's failure can or does cause the MIL to illuminate, coverage under the California Emissions Warranty follows. Yet, FCA does not provide the required coverage.

### FUEL INJECTORS ARE AN EMISSIONS-RELATED PARTS

56.     On information and belief, FCA's own documents, including FCA's OBDII summaries discussed below submitted to CARB as part of the vehicle certification process, identify the specific fault codes relating to fuel injectors that directly correlate with increased emissions and confirm an emissions-related defect. Also, as confirmed by the FCA's OBDII summaries, these fault codes cause the OBDII MIL to be illuminated. The fault codes identified in FCA's OBDII summaries confirm that there is a defect relating to an emissions related part.

57.     As explained above, all of the Class Vehicles are equipped with an OBDII onboard diagnostic system. The system uses sensors to gather data which is evaluated using OBDII fault code logic. If the OBDII logic determines that the data is outside of an acceptable range, a fault code is triggered, identifying a defect which increases regulated emissions. When FCA seeks certification of vehicles for distribution in California, FCA is required, pursuant to 13 CCR 1968.2, to provide CARB with all of FCA's OBDII fault codes and the corresponding logic. Accordingly, when a part that is, or should be, covered under the California Emissions Warranty fails, triggering an OBDII fault code, it fails to perform as described in the vehicle's application for certification. Upon information and belief, these fault codes are submitted to CARB by FCA as "OBD2 Summary Tables". FCA submitted OBD2 Summary Tables or similar documents to CARB for every Class Vehicle and for every model year that the vehicles were

certified for sale in California and that are at issue in this case.

58.     The OBD2 Summary Tables identify the Components/Systems monitored by OBDII, the acceptable ranges relating to the data gathered, the corresponding emissions fault codes and that the MIL will be triggered when a defect is identified. The purpose of the OBDII system, as confirmed in the CCR, is specifically to monitor emissions-related components. This is why FCA is required to develop a compliant OBDII system which identifies emissions related defects, triggering a fault code and a MIL. The fault codes are used to assist technicians in repairing the vehicles, whereas the MIL is used to alert the driver of a defect. This means that every defect that triggers the emissions fault codes identified by FCA in the OBD2 Summary Tables and the MIL is, by definition, an emissions-related defect. The OBD2 Summary Tables, among other documents, identify the parts that have not already been identified as emissions-related parts by FCA in its warranty books but which, when defective, can or do trigger an emissions fault code and result in illumination of the MIL.

59.     Therefore, FCA is required to cover under the California Emissions Warranty any defect that triggers a fault code identified by FCA in its OBD2 Summary Tables submitted to CARB or that should properly be identified on the OBD2 Summary Tables, because such a defect affects regulated emissions.

60.     A defect in the fuel injectors that triggers emissions fault codes in the OBDII system and identified on the OBD2 Summary Tables will also cause the MIL to illuminate.

61.     The foregoing framework and analysis addresses and precludes any potential "slippery slope" argument or concern that every vehicle part could potentially be "emissions-related." This litigation is not dependent on the assertion that "emissions-related parts" are defined as every part in the OBDII system. Rather, this litigation asserts that there should be California Emissions Warranty coverage, at the very least, for the parts, components, or systems whose defects

trigger fault codes identified on the OBD2 Summary Tables and cause the MIL to be illuminated. This includes fuel injectors installed on Class Vehicles. This is because said parts undeniably are "emissions-related" and fail in a manner that increases regulated emissions.

62.    FCA knows which fault codes these are because FCA is required to provide to CARB all the fault codes that trigger a MIL and the specific emissions-related conditions that trigger the fault codes as set forth in the OBD2 Summary Tables. Further, as confirmed in the CARB Declaration, emissions-related parts include any components that "can" or are required to illuminate the MIL in the event of a malfunction, even if the primary function of the component is not emissions control.

### "Appendix B" Parts

63.    Similar to 13 CCR section 2035, 13 CCR Section 2601(i) states that an "'Emissions-related part' means any vehicle part which affects any regulated emissions from a vehicle that is subject to California or federal emissions standards and includes, but is not limited to, those parts specified in the 'Emissions-Related Parts List,' adopted by the State Board on November 4, 1977, as last amended June 1, 1990."

64.    Similarly, 13 CCR Section 1900(b)(3) states that "'Emissions-related part' means any automotive part, which affects any regulated emissions from a motor vehicle which is subject to California or federal emission standards. This includes, at a minimum, those parts specified in the 'Emissions-Related Parts List,' adopted by the State Board on November 4, 1977, as last amended June 1, 1990."

65.    The "Emissions-Related Parts List" is contained at 13 CCR Appendix B which states that "The following list of components are examples of emission related parts as defined in Section 1900(b)(3), Chapter 3, Title 13, California Code of Regulations." Emphasis added. Therefore, FCA is required to cover as

"emissions-related" parts under the California Emissions Warranty (in addition to the MultiAir Actuator), any vehicle part specifically identified on Appendix B.  As confirmed in the CARB Declaration, in Appendix B, and in the Regulations, "emissions-related parts" are not limited to the emissions control system only.

66.    Fuel injectors should be covered under the California Emissions Warranty because this part affects regulated emissions as alleged herein, and because *fuel injectors are explicitly identified as emissions related parts on Appendix B.*

## PLAINTIFF'S CLASS ACTION ALLEGATIONS

67.    Plaintiff re-alleges and incorporates by reference each allegation set forth above.

68.    Plaintiff brings this action on his own behalf, as well as on behalf of all Class members similarly situated, pursuant to Federal Rules of Civil Procedure Rules 23(a), (b)(1), (2) and/or (3) and/or (c)(4).

69.    Plaintiff reserves the right to redefine the Class and Subclasses and to add subclasses as appropriate based on further investigation, discovery, and specific theories of liability.

70.    FCA's California Emission Warranty applies to vehicles purchased and registered in States which, in the year the vehicle was distributed, had adopted the California Emissions Warranty, i.e., "Reg. 177 States" or "Section 177 States".

71.    Defendant's emissions warranty representations arise out of California law that Defendant must apply outside of California to the vehicles in the States listed. Accordingly, Defendant's conduct was specifically intended to have effects outside of California and was specifically intended to apply to vehicles and members of the Classes in those States that Defendant chose to include by the express terms of the California Emissions Warranty.

72.    Under these unique circumstances, California has a specific interest in regulating conduct outside of California that specifically invokes California

emissions requirements and California emissions regulations and has an interest in preventing illegal practices that involve breach of California Emissions Warranty law that Defendant has chosen to invoke outside of California in the States covered by the Reg. 177 Class and Subclass. As Defendant seeks to apply the California Emission System Warranty to members of the Classes and vehicles in the listed States outside of California, members of the Classes in those States likewise should be included in a claim that seeks to vindicate their rights under that same warranty in California and should have the ability to have their rights under that warranty asserted in California and pursuant to California law.

73.    FCA's own express application of the California Emissions Warranty constitutes a sufficient connection between California and out-of-state potential Class members. Further, FCA's misconduct, namely, its failure to identify all emissions-related warranted parts to CARB, a California regulator, occurred in California, and even out-of-state purchasers were harmed by FCA's conduct that occurred in California. FCA failed to disclose, in its submissions to CARB, the parts that are properly covered by the California Emissions Warranty, including, but not limited to, fuel injectors.

74.    As alleged herein, FCA is solely responsible for selecting and identifying to CARB all of the parts that should be classified as emissions warranted parts, and FCA failed to include fuel injectors and other components. Californians and out-of-state potential Class members in the additional States covered by the California Emissions Warranty suffered an identical harm – they were forced to pay the costs of fuel injectors diagnosis, repair, or replacement, which should have been covered under the California Emissions Warranty, and were provided with warranties which were less valuable than the warranties they were legally entitled to at the time they purchased or leased their Class Vehicle. Under these unique circumstances, California has the greater interest in applying California's consumer laws to enforce compliance with the California Emissions

Warranty than the other States have in using their consumer laws to enforce the same Regulation. California has a specific interest in regulating conduct outside of California that specifically invokes California emissions requirements and regulations, and California has an interest in preventing illegal practices that involve breach of California emissions law that Defendant has chosen to invoke outside of California in the specific States covered. California also has a supreme interest in applying its own consumer protection laws in ensuring that the California Emissions Warranty is properly interpreted and applied wherever FCA has chosen to invoke it.

75.     Under the facts of this specific case, the law of California should be applied because California's interest would be more impaired if its consumer laws to enforce the California Emissions Warranty were subordinated to consumer laws of the other States to which FCA has chosen to apply the requirements of the California Emissions Warranty. Other jurisdictions' interests in applying their own consumer protection laws to their own residents do not strongly outweigh the interest California has in applying its consumer protection laws to enforce the California Emission Warranty with respect to the specific potential out-of-state members of the Classes identified herein. Therefore, the Classes alleged herein include persons who purchased or leased Class Vehicles that are registered in States other than California.

76.     There is sufficient similarity among all the Class Vehicles and FCA's conduct as defined herein in that, among other things, all of the vehicles in the proposed Classes are subject to the same California Emissions Warranty and the same requirements that FCA report all emissions-related defects to CARB pursuant to the CCR. FCA has acted in a uniform manner with respect to all Class Vehicles by failing to properly cover fuel injectors in the Class Vehicles as required under the California Emissions Warranty and as described herein.

///

77.    Accordingly, Plaintiff's proposed Class and Subclasses consist of and are defined as follows:

California Class and Subclass:

> All persons in the State of California who have been owners or lessees of Class Vehicles and whose fuel injectors are not covered for 15-years or 150,000-miles (the "California Class").

> All persons in the State of California who have been owners or lessees of Class Vehicles and who have paid for repairs and parts pertaining to fuel injectors which occurred prior to 15-years or 150,000-miles (the "California Out-of-Pocket Subclass").

Reg. 177 Class and Subclass:

> All persons who have been owners or lessees of Class Vehicles in a State which, in the year their vehicle was distributed, had adopted the California Emissions Warranty (i.e., "Reg. 177 States" or "Section 177 States) who have been owners or lessees of Class Vehicles and whose fuel injectors are not covered for 15-years or 150,000-miles (the "Reg. 177 Class").

> All persons who have been owners or lessees of Class Vehicles in a State which, in the year their vehicle was distributed, had adopted the California Emissions Warranty (i.e., "Reg. 177 States" or "Section 177 States) who have been owners or lessees of Class Vehicles and who have paid for repairs and parts pertaining to fuel injectors which occurred prior to 15-years or 150,000-miles (the "Reg. 177 Out-of-Pocket Subclass").

> Excluded from the Classes and Subclasses are Defendant, and its subsidiaries and affiliates; its current and former officers, directors, and employees (and members of their immediate families); and the legal representatives, heirs, successors or assigns of any of the foregoing. Also excluded are any judge, justice, or judicial officer presiding over this matter and the members of their immediate families and judicial staff.

78.    Plaintiff's primary goal on behalf of the Classes is to obtain injunctive relief requiring FCA to comply with the California Emissions Warranty

and declaratory relief with respect to the proper interpretation of the California
Emissions Warranty and FCA's obligations pursuant to the CCRs and the
California Emissions Warranty. Plaintiff's claim for monetary relief is secondary
to his claim for injunctive or declaratory relief. Even in the absence of possible
monetary recovery, Plaintiff would bring this action to obtain the injunctive and
declaratory relief sought. Any monetary relief that would flow to the members of
the Classes would be ancillary to the injunctive or declaratory relief obtained.

79.    On behalf of the members of the Classes, Plaintiff seeks declaratory
judgment/relief pursuant to 28 U.S.C. section 2201 et seq as to, *inter alia*, (1) that
the Fuel Injectors in the Class Vehicles is an 'emissions-related part"; (2) that
FCA has used, and continues to use, the wrong or incorrect standards for
identifying "emission-related" parts under the California Emissions Warranty; (3)
that FCA failed and is failing to properly identify and warrant under the California
Emissions Warranty all of the parts, components or systems in addition to the Fuel
Injectors, that should have been properly covered for emissions-related defects as
identified, *inter alia*, per the fault codes on the Class Vehicles OBD2 Summaries
described herein, per Appendix B to the CARB regulations; and/or, (4) that
Plaintiff and members of the Classes are entitled to warranty coverage under
California Emissions Warranty for all FCA vehicle parts not properly identified as
warranted parts under the California Emissions Warranty as described or defined
herein.

80.    On behalf of the members of the Classes, Plaintiff seeks
reimbursement or restitution for the out of pocket expenses, including diagnostic
fees for amounts wrongfully paid by Plaintiff and members of the Classes relating
to repairs that should have been covered by the FCA's California Emissions
Warranty during the Class periods. Plaintiff's claim for restitution is distinct from
his claim for damages. The damages claim seeks, inter alia, the diminished value
of a California Emissions Warranty that does not cover all parts that should

properly be included in the California Emissions Warranty. Moreover, Plaintiff does not seek the same sum in restitution as he seeks in damages, and the two remedies do not compensate for the same harm. The restitutionary remedy, which seeks out of pocket reimbursement, will not compensate Plaintiff and members of the Classes for damages incurred due to the Class Vehicles having a California Emissions Warranty that has less value because the Warranty does not properly cover all parts that should properly be covered under the California Emissions Warranty and will not compensate for the excess amounts and profits that FCA pocketed due to its misconduct and in being able to avoid paying warranty claims that should have been covered under the California Emissions Warranty.

81.    Further, the harm suffered by Plaintiff and members of the Classes and perpetrated by FCA, is not adequately compensable with damages. The entire purpose of the California Emissions Warranty is to protect the environment. The California Emissions Warranty was enacted by the State of California to restrict harmful greenhouse gas from gasoline and hybrid gasoline engines. The fundamental purpose of the emissions requirements is to reduce emissions, limit fuel consumption and increase fuel efficiency, by forcing manufacturers to repair and/or replace failed emissions-related vehicle components under warranty, thereby decreasing greenhouse gas emissions, including carbon dioxide emissions.

82.    Indeed, motor vehicle use is the single greatest source of U.S. air pollution and is the cause of more air pollution than any other human activity. (Cars, Fuels, and Clean Air: A Review of Title II of the Clean Air Act Amendments of 1990 (1991) 21 Envtl. L. 1947, 1949). Many of these pollutants consist of hydrocarbons and nitrous oxides which react to form photochemical oxidants in the atmosphere. The most notorious of these photochemical oxidants is ozone – the primary component of urban smog. (California Air Resources Bd., Staff Report: Proposed Regulations for Low-Emission Vehicles and Clean Fuels (Aug. 13, 1990) at p. 3). Cars also produce nearly two-thirds of all carbon dioxide

emissions. Carbon dioxide content in the atmosphere is closely linked to global temperature because the temperature of the Earth is primarily determined by the balance between its absorption of energy from the Sun, and the reflection of a portion of this energy back into space. Carbon dioxide – a greenhouse gas – traps the energy and heat which would have otherwise escaped back into space, and re-emits it, causing the warming of our atmosphere. This process is known as the "greenhouse effect."

83.    Therefore, the State of California highly regulates emissions from gasoline and hybrid gasoline engines, specifically greenhouse gas emissions. In September 1990, pursuant to its broad authority to regulate and reduce environmentally harmful vehicle emissions under Health and Safety Code §§ 43013(a) and 43205, CARB submitted, and the Legislature adopted, California Code of Regulation §§ 2035, et seq., which requires all manufacturers to provide a statutorily compliant emissions warranty to all vehicles distributed and registered in California.

84.    In September 2004, CARB approved the "Pavley" Greenhouse Gas Regulations to control greenhouse gas emissions from new LEV II vehicles beginning with the 2009 model year. These Greenhouse Gas Regulations added four greenhouse gas air contaminants to the vehicular criteria and toxic air contaminant emissions that California was already carbon dioxide ($CO_2$), methane ($CH_4$), nitrous oxide ($N_2O$), and hydrofluorocarbons (air conditioner refrigerants). The State and federal government have specifically focused on regulating greenhouse gas emissions, including carbon dioxide emissions. If a gas vehicle has a defect which increases fuel consumption, that defect increases carbon dioxide emissions.

85.    Notwithstanding State and federal regulations designed to protect our air, monitoring shows that over 90 percent of Californians breathe unhealthy levels of one or more air pollutants during some part of the year. Despite CARB's

best efforts, in 2020, "there were 157 bad air days for ozone pollution—the invisible, lung-searing gas in smog—across the vast, coast-to-mountains basin spanning Los Angeles, Orange, Riverside and San Bernardino counties. That's the most days above the federal health standard since 1997." (Barboza, Tony (Dec. 6, 2020) L.A. Began 2020 With A Clean-Air Streak but Ended with Its Worst Smog in Decades, Los Angeles Times [https://www.latimes.com/42alifornia/story/2020-12-06/2020-laair-quality-southern-california-pollution-analysis].) One of the reasons that our environment is in such a state of crisis is that corporations are not following our very thoroughly formulated rules.

86.    Accordingly, damages are inadequate to compensate for the foregoing harms caused by FCA's violation, and continuing violation, of the California Emissions Warranty. Money damages will not fix the harm caused by Defendant's violation of emissions laws, which requires equitable relief.

87.    Further, FCA and car manufacturers should not be able to shirk their legal responsibilities simply by paying damages. Simply paying off consumers undermines the entire purpose of the California Emissions Warranty and will leave FCA in the position of being able to continue to violate the law and increase harmful vehicle emissions by just paying damages. Ironically, this result will leave Plaintiff and members of the Classes in an even worse position than by simply receiving monetary compensation alone.

88.    Moreover, payment of damages does not ensure that the emissions parts will actually be repaired. That result will only be ensured by forcing FCA to cover the repair under the California Emissions Warranty as required.

89.    Further, equitable relief is required because damages alone will not be sufficient for Class members to identify all parts whose defects result in fault codes identified in the OBD2 Summaries being triggered. Only FCA has done the analysis and knows the fault code logic that would allow for identification of all required fault codes to CARB and all parts that give rise to those fault codes so

that those parts can be identified and properly covered under the California Emissions Warranty. In effect, Plaintiff's request for equitable relief is the only way to get FCA to do what it is required to do.

90.     There are common questions of law and fact as to members of the Class and Subclasses that predominate over questions affecting only individual members, including, but not limited to:

(a)     Whether FCA has failed and is failing to acknowledge that the fuel injectors installed in the Class Vehicles should be covered under the 15-year, 150,000-mile California Emissions Warranty, pursuant to California law;

(b)     Whether FCAs failure to comply with the California Emissions Warranty by failing to provide a 15-year, 150,000-mile California Emissions Warranty for the fuel injectors installed in the Class Vehicles damaged Class members when they purchased or leased a Class Vehicle with a less valuable warranty than they were entitled to;

(c)     Whether FCA has engaged in and is engaging in a systematic business practice of failing to identify that the fuel injectors installed in the Class Vehicles should be covered under the 15-year, 150,000-mile California Emissions Warranty, pursuant to California law;

(d)     Whether FCA's conduct is an unlawful and unfair business practice in violation of California Business & Professions Code section 17200, *et seq.*;

(e)     Whether Plaintiff and Class members are entitled to declaratory and injunctive relief regarding FCA's failure to identify that the fuel injectors installed in the Class Vehicles should be covered under the 15-year, 150,000-mile California Emissions Warranty, pursuant to California law;

(f)     The appropriate remedy for FCA's violations of California law.

91.     There is a well-defined community of interest in the litigation and the Class members are readily ascertainable:

(a)     <u>Numerosity</u>: The Class members are so numerous that joinder of all Class members would be unfeasible and impractical. The membership of the entire Class is unknown to Plaintiff at this time; however, the Class is estimated to be greater than one hundred (100) individuals and the identity of such membership is readily ascertainable by inspection of Defendant's records.

(b)     <u>Typicality</u>: Plaintiff is qualified to, and will, fairly and adequately protect the interests of each Class member with whom he has a well-defined community of interest, and Plaintiff's claims (or defenses, if any) are typical of all Class members as demonstrated herein.

(c)     <u>Adequacy</u>: Plaintiff is qualified to, and will, fairly and adequately protect the interests of each Class member with whom he has a well-defined community of interest and typicality of claims, as demonstrated herein. Plaintiff acknowledges that he has an obligation to make known to the Court any relationship, conflicts or differences with any Class member. Plaintiff's attorneys, the proposed Class counsel, are versed in the rules governing class action discovery, certification, and settlement. Plaintiff has incurred, and throughout the duration of this action, will continue to incur costs and attorneys' fees that have been, are, and will be necessarily expended for the prosecution of this action for the substantial benefit of each Class member.

(d)     <u>Superiority</u>: The nature of this action makes the use of class action adjudication superior to other methods. A class action will achieve economies of time, effort, and expense as compared with separate

1    lawsuits, and will avoid inconsistent outcomes because the same

2    issues can be adjudicated in the same manner and at the same time for

3    the entire class.

4    **TOLLING OF THE STATUTE OF LIMITATIONS**

5    92.    FCA has engaged in misleading and dishonest conduct relating to its

6    failure to identify all of the parts, including fuel injectors, that should be covered

7    pursuant to the California Code of Regulations regarding the California Emissions

8    Warranty. Despite acting diligently, Plaintiff and Class members lacked the

9    resources and had no realistic ability to identify the specific parts that should have

10   been covered. Plaintiff and Class members cannot be reasonably expected on their

11   own to learn or discover what parts should be covered under the California

12   Emissions Warranty. Therefore, the discovery rule is applicable to the claims

13   asserted by Plaintiff and Class members, and the statute of limitations for bringing

14   the claims set forth herein should be tolled.

15   93.    FCA has actual and constructive knowledge that it is violating

16   California law by failing to identify all of the parts that should be covered under

17   the California Emissions Warranty. FCA has concealed from Plaintiff and Class

18   members that FCA is violating California law as set forth herein. Any applicable

19   statute of limitation is tolled by FCA's wrongful conduct set forth herein, and

20   FCA is estopped from relying on any statute of limitation because of its conduct as

21   set forth herein.

22   **FIRST CAUSE OF ACTION**

23   **Violation of California Unfair Competition Law**

24   **(Cal. Bus. & Prof. Code §§ 17200, *et seq.*)**

25   **By Plaintiff, the California Class, and the Reg. 177 Class Against Defendant**

26   94.    Plaintiff re-alleges and incorporates by reference each allegation set

27   forth above.

28   ///

95.     California Business and Professions Code section 17200, *et seq*. (the "UCL") prohibits "any unlawful, unfair or fraudulent business act or practice." FCA has committed acts of unfair competition proscribed by the UCL, including the acts and practices alleged herein.

96.     The UCL imposes strict liability. Plaintiff need not prove that FCA intentionally or negligently engaged in unlawful or unfair business practices – only that such practices occurred.

97.     FCA is a "person" as defined by Business & Professions Code § 17201.

98.     As a direct and proximate result of FCA's acts and practices in violation of the UCL, Plaintiff and members of the California Class and the Reg. 177 Class have suffered injury in fact and lost money or property as set forth above and will continue to do so.

### **Unlawful Prong**

99.     A business practice is "unlawful" under the UCL if it is forbidden by law or regulations, including the standard of professional conduct.

100.    The violation of any law or regulation may serve as the predicate for a violation of the "unlawful" prong of the UCL.

101.    FCA's conduct is unlawful because it violates the California Code of Regulations, including the requirement under the California Code of Regulations, by failing to provide coverage under the California Emissions Warranty.

102.    FCA's conduct violates California Code of Regulations section 1962.1, 2037(c) and 2038(c) because FCA fails to identify fuel injectors as a part that should be covered under the 15-year/150,000-mile California Emissions Warranty.

103.    FCA's conduct is unlawful because it fails on a systemic and class wide basis to provide coverage for fuel injectors installed in the Class Vehicles for 15-years or 150,000-miles, as required pursuant to CCR Sections 1962.1,

2035, 2037, and 2028.

104.   FCA's acts of unlawful competition as set forth above present a continuing threat and will persist and continue to do so unless and until this Court issues appropriate injunctive relief. Plaintiff also seeks attorneys' fees and costs pursuant to, *inter alia*, C.C.P. § 1021.5.

**Unfair Prong**

105.   An act or practice is unfair if the consumer injury is substantial, is not outweighed by any countervailing benefits to consumers or to competition, and is not an injury the consumers themselves could reasonably have avoided. An act or practice also is unfair if it offends an established public policy or is immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers. An act or practice also is unfair if Plaintiff's claims are "tethered" to specific constitutional, statutory, or regulatory provisions. FCA's conduct violates all of these definitions.

106.   As alleged above, FCA engages and has engaged in a systematic business practice of failing to identify for consumers and its factory authorized repair facilities that the fuel injectors installed in the Class Vehicles are covered by the California Emissions Warranty. FCA does this in an effort to reduce the amount of money that FCA spends on warranty-related repairs knowing that it would be very difficult if not impossible for most consumers to discover this unlawful conduct. If FCA complied with California law and properly identified that the fuel injectors installed in the Class Vehicles should be identified as covered under the 15-years, 150,000-miles California Emissions Warranty, then FCA dealerships would properly provide warranty coverage for said parts.

107.   Further, FCA's conduct is unfair because it refuses to provide warranty coverage for fuel injectors installed in the Class Vehicles pursuant to the California Emissions Warranty for 15-years or 150,000-miles for the sole purpose of wrongfully limiting its warranty claims, with no regard for the fact that the

public is being forced to pay for repairs which should be covered under the 15-year 150,000-mile California Emissions Warranty, or that the public is being provided with a warranty that is less valuable than the warranty they are legally entitled to at the time of purchase or lease of their Class Vehicle. Plaintiff and members of the Class have wrongfully been denied warranty coverage at service centers throughout California and have suffered injury in fact and a loss of money or property as a result of FCA's unfair business acts and practices as set forth in detail.

108.    FCA's failure to properly identify that fuel injectors installed in Class Vehicles should have been covered under the 15-year, 150,000-mile California Emissions Warranty is a uniform and systematic statewide business practice on the part of FCA to minimize the amount of money that FCA has to pay out in warranty claims. This conduct violates California law.

109.    All of the acts and practices of FCA as described in this complaint constitute "unfair" business acts and practices. A business act or practice is "unfair" under the UCL if the reasons, justifications, and motives of the alleged wrongdoer are outweighed by the gravity of the harm to the alleged victims. Plaintiff has suffered injury in fact and a loss of money or property as a result of FCA's unfair business acts and practices as set forth herein in detail. It is Plaintiff's information and belief that Class members have also suffered injury as a result of FCA's wrongful conduct.

110.    As a direct and proximate result of FCA's acts and practices in violation of the UCL, Plaintiff and members of the Class have paid out of pocket to repair or replace emissions components that should have been covered by FCA under the 15-year 150,000-mile California Emissions Warranty. Forcing consumers to pay out of pocket to repair or replace vehicle components that should be covered under warranty is clearly unfair.

///

CLASS ACTION COMPLAINT

111.   As a direct and proximate result of FCA's acts and practices in violation of the UCL, Plaintiff and members of the Class have purchased or leased Class Vehicles which provided inadequate, truncated, and less valuable warranty coverage to the fuel injectors than they were legally entitled to, as alleged herein. Failing to provide customers with California Emissions Warranty coverage for fuel injector defects in Class Vehicles which increase regulated emissions, in violation of the CCR, is clearly unfair.

112.   FCA's conduct does not benefit consumers or competition. Plaintiff and Class members could not reasonably avoid the injury each of them suffered or will suffer, which injury is substantial. FCA's conduct only benefits FCA, by enabling FCA to avoid having to pay warranty claims for defective fuel injectors in Class Vehicles which should be covered by the 15-year 150,000-mile California Emissions Warranty.

113.   The gravity of the consequences of FCA's conduct as described above outweighs the justification, motive, or reason and therefore, is immoral, unethical, and unscrupulous, and offends established public policy that is tethered to legislatively declared policies as set forth in the laws detailed above, or is substantially injurious to the public, for the reasons set forth above.

114.   FCA's conduct also offends established public policy that is tethered to legislatively declared policies as set forth in the laws detailed above, including California laws and regulations regarding California's Emission Control System Warranty Requirements, or is substantially injurious to the public, for the reasons set forth above.

115.   To the extent that any definition of "unfair" requires a balancing test or weighing various factors, such an inquiry is fact intensive and requires a full factual record as to FCA's justification and motives for its conduct, and as to the impact of FCA's conduct on Plaintiff and Class members.

///

116.   FCA's acts of unfair competition as set forth above present a continuing threat and will persist and continue to do so unless and until this Court issues appropriate injunctive relief. Plaintiff also seeks attorneys' fees and costs pursuant to, *inter alia*, C.C.P. § 1021.5.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, on behalf of himself and all others similarly situated, prays for relief and judgment against FCA as follows:

1.     For an order certifying this case as a class action, appointing Plaintiff as the representative of the Classes and Subclasses, and appointing counsel for Plaintiff as Class Counsel;

2.     That the Court declare, adjudge, and decree that FCA is financially responsible for notifying all Class members about the wrongful conduct set forth herein; that FCA's conduct as alleged herein violates the California Emissions Warranty laws because FCA has, among other things, used, and continues to use, the wrong or incorrect standards for identifying "emissions-related" parts under the California Emissions Warranty; FCA failed and is failing to properly identify and warrant under the California Emissions Warranty fuel injectors and/or all of the parts, components or systems that should have been properly covered for emissions-related defects as identified and limited as described herein, and/or that Plaintiff and the members of the Class are entitled to warranty coverage under California Emissions Warranty for fuel injectors in Class Vehicles under the California Emissions Warranty as described or defined herein; and an order requiring FCA to, *inter alia*, review its warranty books for all Class Vehicles and properly identify and warrant fuel injectors and, on a going forward basis, use the proper standard for determining whether a part is "emissions-related" under the California Emissions Warranty;

3.     That the Court declare, adjudge, and decree that FCA is responsible for notifying all Class members about the wrongful conduct set forth herein;

4.    That the Court declare, adjudge, and decree that FCA's failure to identify and warrant fuel injectors in Class Vehicles pursuant to the California Emissions Warranty constitutes an unfair and unlawful business practice in violation of California Business and Professions, Civil Code sections 17200, *et seq.*;

5.    For declaratory relief pursuant to 28 U.S.C. section 2201 that FCA is in violation of, and must comply with, the California Emissions Warranty, namely, that FCA, *inter alia*, identify and cover the fuel injectors in Class Vehicles under the California Emissions Warranty;

6.    For an order declaring and enjoining FCA from further unfair and unlawful distribution, sales, and lease practices and compelling FCA to properly and fully identify that fuel injectors in Class Vehicles is covered pursuant to the California Emissions Warranty. Further, FCA will provide restitution for amounts wrongfully paid by Plaintiff and Class members relating to these repairs which should have been covered by FCA under the California Emissions Warranty, as well as the amount by which consumers overpaid for the purchase or lease of their vehicle as a result of the truncated and noncompliant warranties provided to them at the time of purchase or lease;

7.    For an award to Plaintiff and the Out-of-Pocket Subclass members of any repair costs they are owed;

8.    For the appointment of a receiver, as necessary, to receive, manage and distribute any and all funds from FCA and determined to have been wrongfully acquired by FCA as a result of violations of California Business & Professions Code sections 17200, *et seq.*;

9.    For an award of attorneys' fees and costs pursuant to California Code of Civil Procedure § 1021.5;

10.    For an award of attorneys' fees and costs, as otherwise allowed by law;

11.     For an award of pre-judgment and post-judgment interest;

12.     For leave to amend the Complaint to conform to the evidence produced at trial; and,

13.     For all other relief as may be appropriate under the circumstances.

Dated: August 4, 2022                    Respectfully submitted,

**POMERANTZ LLP**
**THE LAW OFFICE OF ROBERT STARR**
**FRONTIER LAW CENTER**

By:_____/s/ Robert L. Starr_____
Jordan L. Lurie
Ari Y. Basser
Robert L. Starr
Manny Starr

*Attorneys for Plaintiff*

DEMAND FOR JURY TRIAL

Plaintiff demands a jury trial pursuant to Fed. R. Civ. Pro 38.

Date: August 4, 2022                    LAW OFFICE OF ROBERT L. STARR

_/s/ Robert L. Starr_____
Attorney for Plaintiff
Juvenal Rodriguez

CLASS ACTION COMPLAINT